# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

### MOORE v. BAKER et al.

#### (Circuit Court, E. D. Wisconsin. February 13, 1888.)

PRINCIPAL AND SURETY—CONTRIBUTIONS BETWEEN CO-SURETIES—ENFORCEMENT IN EQUITY—EXHAUSTING REMEDY AT LAW.

A bill by a surety against a co-surety, to compel contribution, and to set aside certain conveyances and subject the property conveyed to the satisfaction of such liability, is not a creditors' bill, and a court of equity may, upon suitable averments, proceed to grant such relief, without requiring the surety to first exhaust his remedy at law by judgment and return of *nulla bona*.

In Equity. On demurrer to bill.

The case made by the bill was this: In April, 1880, one John C. Pierron was elected treasurer of the city of Fond du Lac. He executed to the city a bond for the faithful performance of the duties of the office, in the sum of $100,000. The bond was also signed by John Hughes, James Gaynor, Charles B. Bartlett, Leon Lallier, Thomas Mason, Robert A. Baker, one of the defendants in the present suit, and the complainant, Moore,—all of whom executed the bond as sureties of Pierron. Subsequently, Pierron, as such treasurer, became liable to the city in the sum of over $37,000, and the city brought suit upon the bond against him and his sureties to recover said sum. Mason died after the bringing of the suit, and before judgment. Pierron appeared, and answered that he had taken proceedings in insolvency, under the statutes of the state, had made an assignment of his property in said proceedings, and had been discharged from all his debts and liabilities. Judgment was obtained in the suit in favor of the city against Baker, Hughes, Lallier, Moore, Gaynor, and Bartlett, in the sum of $39,-707.93, which became a lien upon the real estate of each of the judgment defendants situated in the county of Fond du Lac. This judgment was affirmed, on appeal, by the supreme court of the state, (*City of Fond du Lac* v. *Moore*, 15 N. W. Rep. 782,) as to all of the defendants except Hughes, who was discharged from all liability, as surety of Pier-

ron. Subsequently an execution was issued on the judgment, and, to prevent a levy upon the property of the defendants, Gaynor, Bartlett, and Moore paid and satisfied the judgment. Gaynor and Bartlett then assigned to the complainant, Moore, all demands and rights of action growing out of the judgment and payment thereof which they had against the defendant Robert A. Baker, and all right and claim which they had jointly or severally for contribution from Baker, on account of the payment of the judgment. The bill then charged that the defendant Robert A. Baker, as one of the judgment defendants in the suit brought by the city, was liable for, and ought to have paid, one-sixth of the sum of $37,732.34, but that he had not paid any part thereof; that, in justice and equity, he was liable to the complainant in this suit, and should pay him one-tenth of the sum last mentioned, with interest, the same being the contributive share that he ought to pay to the complainant, as representing his own interest and the interests of Gaynor and Bartlett, which had been assigned to the complainant. The bill then alleged that the defendant Robert A. Baker was, and had long been, wholly insolvent; that he and his wife, the defendant C. Estelle Baker, had removed out of the state of Wisconsin, and were non-residents of the state; and that in 1881, which was prior to the recovery of the judgment against the sureties of Pierron, he had, in contemplation of insolvency, and in fraud of creditors, and in pursuance of a fraudulent scheme to vest in his wife the title of certain property which he then owned, so that creditors could not reach it, conveyed certain real estate, described in the bill, to his son Robert C. Baker, who conveyed the same to the defendant C. Estelle Baker; and that, since that time, this property has been held by Baker's wife, for his use and benefit. It was alleged that these conveyances were without consideration, and were made for the sole purpose of hindering and defrauding creditors, and that, in justice and equity, the lands so conveyed ought to be applied by the defendant Baker, by way of contribution, in satisfaction of the demand of his co-sureties, and be made subject to the lien of the judgment recovered by the city, for the purpose of enforcing such contribution. It was also alleged that Baker is the owner of certain other premises in the city of Fond du Lac, which he has claimed as a homestead; but that his alleged homestead right therein has been lost by his abandonment thereof, and by the removal of himself and his family out of the state of Wisconsin. The prayer of the bill was that the defendant Robert A. Baker be required to pay to the complainant the sum of $3,773.23, his contributive share of the judgment aforesaid; that the conveyances mentioned, executed by him to his son, and by the latter to the defendant C. Estelle Baker, be adjudged fraudulent; that the lands therein described be decreed to be subject to sale to satisfy the complainant's demand; that the complainant be subrogated to the rights of the city of Fond du Lac under the judgment recovered by it against the sureties of Pierron, as to the defendant Robert A. Baker; that Baker be adjudged to have lost and forfeited his homestead right in that portion of the premises in which he has heretofore claimed such right; that the complainant be adjudged and decreed

to have a paramount lien upon all the lands and premises described in the bill; that the same may be ordered to be sold to satisfy the decree for the payment of money prayed therein, and for such other and further relief as shall be deemed just and equitable. The bill was demurred to for want of equity.

*Stark & Sutherland*, for complainant.

*E. S. Bragg*, for defendants.

DYER, J. As is apparent from the foregoing statement of facts, the object of this suit is to enforce contribution between sureties, and, in aid thereof, to obtain a decree setting aside certain conveyances of property made by the defendant Robert A. Baker, which are alleged to have been fraudulent, so that such property, or its proceeds, may be applied in payment of Baker's contributive share of the judgment recovered by the city against the sureties of Pierron.

In support of the demurrer, the point is made and strenuously urged that, as to the defendant C. Estelle Baker, this is a creditors' bill, and that, as to the property conveyed to her, the complainant is not entitled to the relief he seeks, because it is not alleged in the bill that he has recovered a judgment at law against Robert A. Baker upon which execution has been returned unsatisfied. It is insisted that the complainant must first exhaust his remedy at law against Baker, before he can come into a court of equity and invoke its aid for the purpose of avoiding the alleged fraudulent conveyances; and that the allegation of Baker's insolvency does not answer the requirements of the rule on the subject, as applied to creditors' bills, or bills for relief against fraudulent transfers of property. The law is well settled that the right of a creditor to pursue specific real property alleged to have been fraudulently conveyed by the debtor, to obtain satisfaction of his debt, depends upon the fact of his having exhausted his legal remedy by the recovery of a judgment, and return of execution unsatisfied. The proposition has become so far elementary that authorities in support of it need not be cited. If, therefore, this were a creditors' bill, pure and simple, or merely a bill by a creditor at large to set aside fraudulent conveyances, the point made by the demurrer would be unanswerable. But the bill embraces other matters clearly cognizable in a court of equity. It is a bill by one surety to compel contribution by a co-surety, and, as supplementary to the main purpose of the bill, relief is sought against certain conveyances of real estate, to the end that the property conveyed may be ultimately reached to satisfy such liability to contribution by the co-surety as may be established by final decree. As is said in *Mason* v. *Pierron*, 63 Wis. 244, 23 N. W. Rep. 119:

"Actions to enforce contribution between sureties, and to subrogate a surety who has paid the debt of the principal debtor to the securities and rights of the creditor, are constantly sustained by courts of equity, and have been from the earliest times."

The enforcement of contribution between sureties is a recognized subject of equity jurisdiction. "The ground of relief does not," says Story,

(section 493, Eq. Jur.,) "stand upon any notion of mutual contract, express or implied, between the sureties to indemnify each other in proportion; but it arises from principles of equity, independent of contract." In *Stirling* v. *Forrester*, 3 Bligh, 590, Lord REDESDALE said:

" The principle established in the case of. *Dering* v. *Lord Winchelsea*, 1 Cox, 318, is universal, that the right and duty of contribution is founded in doctrines of equity. It does not depend upon contract. If several persons are indebted, and one makes the payment, the creditor is bound in conscience, if not by contract, to give to the party paying the debt all his remedies against the other debtors. The cases of averages in equity rest upon the same principle."

Where the legal remedy is adequate, a court of law has concurrent jurisdiction with that of a court of equity in cases of contribution. "But still," says Story, (section 496, Eq. Jur.,) "the jurisdiction now assumed in courts of law upon this subject in no manner affects that originally and intrinsically belonging to equity. Indeed there are many cases in which the relief is more complete and effectual in equity than it can be at law; as, for instance, where an account and discovery are wanted, or where there are numerous parties in interest, which would occasion a multiplicity of suits. In some cases the remedy at law is now utterly inadequate; as, if there are several sureties, and one is insolvent, and another pays the debt, he can, at law, recover from the other solvent sureties only the same share as he could if all were solvent. Thus, if there are four sureties, and one is insolvent, a solvent surety who pays the whole debt can recover only one-fourth part thereof (and not a third · part) against the other two solvent parties. But in a court of equity he will be entitled to recover one-third part of the debt against each of them; for in equity the insolvent's share is apportioned among all the other solvent sureties. Where two are bound for the payment of a specific sum, and one pays the whole, he can, either in law or in equity, call upon the other to contribute, and thus recover a moiety of what he had paid." Will. Eq. Jur. 107. See, also, 3 Pom. Eq. Jur. §§ 1416, 1418, 1419, and notes. This being the law on the subject of jurisdiction in equity in cases of this character, it follows that the complainant could properly file his bill on the equity side of the court, to enforce contribution by his co-surety, the defendant Robert A. Baker. As the case is one, so far as it seeks to compel contribution, of which a court of equity has undoubted jurisdiction, it could be rightfully brought here in the first instance, even though it may be a case of which a court of law has concurrent jurisdiction. If, then, original relief in equity may be rightfully sought by the complainant to compel Baker to pay his contributive share of the judgment recovered by the principal creditor against all the sureties, why may not the complainant, as an incident to such relief, or as supplementary to it, and in order to satisfy a demand properly enforceable in equity in the first instance, upon averments of Baker's insolvency, reach property which it is alleged Baker has caused to be fraudulently conveyed to his wife? To hold that he cannot, for the reason that he must first exhaust his legal remedy against Baker, is in effect to deny to the com-

plainant the right in the first instance to bring his suit in a court of equity to compel Baker, as a co-surety, to pay his contributive share of the indebtedness of all the sureties to the city. If the complainant, without having brought a suit at law against Baker, has the right to institute an original proceeding in a court of equity to enforce the payment by Baker of his alleged contributive share of the liability which all the sureties have incurred, then it must follow that he has the right in the same proceeding, upon alleging and showing that he cannot otherwise collect his demand against his co-surety, to pursue the property of that co-surety which it is alleged has been fraudulently conveyed to a third party, who is made a defendant in the suit. That part of the relief sought which relates to the application of certain property to the satisfaction of the complainant's demand because of the alleged insolvency of Baker, may be said to be incidental to the principal recovery prayed in the bill; and, as a court of equity has jurisdiction to grant the principal relief asked, without reference to the fact that a court of law may have concurrent jurisdiction, it may proceed, upon suitable allegations made, to dispose of the whole controversy.

From what has been said, it seems to the court quite apparent that there is a well-founded distinction between a suit of the nature of this—which is one to determine the sum which the defendant Robert A. Baker ought to pay his co-surety, and to enforce the payment thereof—and a creditors' bill brought to enforce a liability already established in a suit at law. As bearing on the question decided, see *Mason* v. *Pierron*, 63 Wis. 239, 23 N. W. Rep. 119, and *Smith* v. *Rumsey*, 33 Mich. 183.

Demurrer overruled, with leave to the defendants to answer the bill.